UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASE CONCEPTS INTERNATIONAL, LLC, RAUL RIVEROS, XIMENA Y. BARRERA RIVEROS, EDWARD BELL, and PAMELA BELL, | Civ. Action No. 7:16-cv-07664-KMK |
| Plaintiffs, | ECF Case |
| vs. | |
| TEICH, BEIM & MORO, C.P.A.'S, P.C. and DAVID A. TEICH, | |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiffs Case Concepts International, LLC, Raul Riveros, Ximena Y. Barrera Riveros, Edward Bell and Pamela Bell (collectively, "Plaintiffs"), by and through their attorneys, Murray & Di Bella LLP, make their Second Amended Complaint against defendants David A. Teich and Teich, Beim & Moro (collectively, "Defendants") and allege as follows:

### PRELIMINARY STATEMENT

1.     This is an action for professional negligence based on the defendant CPAs' failure to properly render professional services to Plaintiffs and their negligent preparation of Plaintiffs' tax returns. As a result of the various errors made by Defendants and their failure to properly advise Plaintiffs, Plaintiffs were forced to hire counsel to rectify Plaintiffs' errors, defend themselves against IRS audits, and pay penalties in excess of $700,000 to the IRS. As more particularly alleged below, Plaintiffs seek damages in excess of $1,000,000, together with costs incurred in this action, plus interest.

## THE PARTIES

2.     Plaintiff Case Concepts International, LLC ("Case Concepts" or the "Company") is a Connecticut limited liability corporation headquartered in Stamford, Connecticut.

3.     Case Concepts is a dedicated original equipment case design and manufacturing firm with extensive experience in the medical, consumer and wireless industries. Case Concepts' experience in case designs and manufacturing ranges from hi-end medical equipment to fashionable cosmetic bags. The Company has commercial offices in Europe and wholly owned manufacturing, logistics and sourcing facilities in China.

4.     Plaintiff Raul Riveros ("Riveros") is an individual residing in Darien, Connecticut. Riveros is the Managing Member of Case Concepts and, both individually and in conjunction with his family trust, owns 90% of Case Concepts.

5.     Plaintiff Edward Bell ("Bell") is an individual residing in Southbury, Connecticut. Bell is a member of Case Concepts and the owner of 10% of Case Concepts.

6.     Plaintiff Ximena Y. Barrera Riveros is an individual residing in Darien, Connecticut and is Riveros' wife.

7.     Plaintiff Pamela Bell is an individual residing in Southbury, Connecticut and is Bell's wife.

8.     Defendant David A. Teich ("Teich") is and was, at all relevant times, a certified public accountant ("CPA") licensed to practice in the State of New York, residing in and doing business in Rockland County, New York.

9.     Defendant Teich, Beim & Moro, C.P.A.'s, P.C. ("TBM") is a New York professional corporation with its headquarters in Suffern, New York.

-2-

10.     TBM is a firm of CPAs offering a wide range of services in the areas of accounting, auditing, taxation and management advisory services, whose principal interest is the servicing of small and medium size businesses in the tri-state area.

11.     Teich is the chief executive officer of and a partner at TBM and has acted in such capacity since at least 2004.

## JURISDICTION AND VENUE

12.     Jurisdiction is founded upon diversity of citizenship under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 301.

14.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

15.     On or about 2004, Riveros retained Defendants as the outside accountant for Case Concepts, as the return preparer for Case Concepts, Chiron USA, LLC ("Chiron") and for Riveros and Bell, and to provide Plaintiffs with a broad range of advice and services regarding, among other things: their personal and business tax returns, their financial reporting obligations, specific accounting and tax compliance guidance, the preparation of Case Concepts' annual financial statements, the preparation of tax filings for any companies personally held by Riveros, and the handling of any issues that might arise with any U.S. tax or regulatory authority regarding financial matters.

16.     Defendants prepared all of Case Concepts' income tax returns for tax years 2003 through 2012.

17.     Defendants prepared all of Riveros' and Bell's personal income tax returns (which each filed jointly with their respective wives), for tax years 2004 through 2012.

18.     At all relevant times, Defendants were paid on a retainer basis for their services.

19.     During the years Defendants were retained, Defendants were paid in excess of $196,000 for their services.

20.     At all relevant times, Defendants held themselves out as being skilled and competent in certified public accounting and adhering to accepted professional standards in their profession.

21.     At all relevant times, Defendants held themselves out as competent and well qualified individually and as a firm to handle the engagement for Case Concepts, Riveros and Bell, and their spouses.

22.     At all relevant times, Plaintiffs justifiably relied upon Defendants' professed competency, proficiency and diligence in providing the services and advice they were retained to provide.

***Defendants Knew Plaintiffs Maintained Foreign Companies and Foreign Financial Accounts But Rendered the Wrong Advice As to the Legal Requirements***

23.     During the course of Defendants' retention, Riveros provided Defendants with, *inter alia*, information regarding the business of Case Concepts and Chiron, including transactions between Case Concepts and foreign companies and transactions between Chiron and foreign companies – the exact transactions that a competent CPA would know required reporting as foreign accounts. Further, Plaintiffs provided access to the Company's and Chiron's financial records and related data, including information regarding related party transactions with foreign companies owned by Case Concepts and Riveros.

24.     Defendant Teich specifically advised Riveros that as long as Riveros did not have signatory authority over a foreign financial account he did not need to annually file a Report of Foreign Bank and Financial Accounts ("FBAR"). Teich further advised Riveros that as long as he did not take distributions from the foreign companies, he would not be subject to tax liability in the United States.

25.     Teich's advice was contrary to the law and the language of the FBAR inquiry itself as contained on the tax returns, as the inquiry clearly provides  "[do] you have a financial interest in or signature authority over a financial account located in a foreign country?" (The excerpted FBAR section from the 2012 tax return is attached hereto as exhibit 1, with the Form TD F 90-22.1 referenced therein also being known as the FBAR).

26.     Defendants' prior knowledge of Case Concepts' financial interests in these foreign companies is indisputable, evidenced not only in the documents they were in possession of, but also in the representations that they themselves made in the notes to the financial statements, where Defendants noted that an affiliate acted as purchasing agent for Case Concepts overseas, that Case Concepts purchased merchandise from a company affiliated through common ownership, and that Case Concepts made sales to a related member.

### *Defendants Failed to Advise Plaintiffs of Their Disclosure, Filing or Tax Obligations Related to Foreign Companies and Foreign Financial Accounts*

27.     Any U.S. person that owns more than 50% of a foreign corporation is obligated to file a Form 5471 reporting the ownership of the corporation and other data, each year with his/her personal tax return (or its business corporation or LLC's tax return if that entity is the owner of the foreign corporation).

28.     Failure to file the requisite Form 5471, or filing a Form 5471 that does not include complete and accurate information required exposes a taxpayer to significant penalties.

29.     Despite their indisputable knowledge of Case Concepts' and Riveros' financial interests in these foreign corporations, Defendants never advised Plaintiffs of the need to file and attach to their tax returns a Form 5471 with respect to the foreign corporations that each owned.

30.     Defendants failed to include any Form 5471 as part of the income tax returns prepared for Case Concepts and Riveros for tax years 2003 through 2012.

31.     Under U.S. law, if at any time during the calendar year a U.S. person has a financial interest in or signature authority over one or more foreign financial accounts with an aggregate value of $10,000 or more, he is required to file annually a FBAR and make a corresponding disclosure on his tax return, specifically referencing the need to make the FBAR filing and also disclosing the name of the foreign country where the financial account is located.

32.     Failure to disclose and properly report foreign financial accounts can result in the imposition of civil penalties and criminal sanctions.

33.     Despite their indisputable knowledge that each of the foreign companies owned by Case Concepts and/or Riveros had foreign bank accounts, Defendants inexplicably, but wrongly, advised Riveros that he did not need to yearly file an FBAR with respect to bank accounts that the foreign companies maintained or for his own foreign bank accounts because Riveros did not have signature authority over those accounts. Defendants were therefore negligent in not knowing what triggered the obligation to report foreign accounts and in misreading the FBAR requirements as being triggered by only signature authority as opposed to financial interests, as clearly set for the tax returns themselves.

34.     The 2012 FBAR filing deadline was June 30, 2013. Due to their own negligence and misunderstanding of the law, Defendants failed to advise Plaintiffs of the need to file an FBAR on behalf of Riveros on or before that date.

35.    On or about September 30, 2013, Defendants forwarded tax returns for tax year 2012 to Plaintiffs for filing. Like the previous returns, the 2012 returns prepared by Defendants failed to attach the requisite Forms 5471, failed to report any income from the foreign financial assets, and wrongly attested in Part III of Schedule B therein that neither Riveros nor his wife had at any time during 2012, "a financial interest in or signature authority over a financial account located in a foreign country." In fact, Defendants did the opposite, and when presented with a box to check "Yes" or "No" as to whether Plaintiffs maintained foreign accounts, Defendants wrongly, and inexplicably, checked the "No" box.

36.    Had Defendants answered "Yes" as required, the very next line on the tax return instructed them: If "Yes," are you required to file Form TD F 90-22.1 [the FBAR] to report that financial interest or signature authority. See Form TD F 90-22.1 and its instructions for filing requirements and exceptions to those requirements."

37.    Subsequent to the 2012 FBAR filing deadline, but before the deadline for filing 2012 tax returns, Defendants for the first time learned themselves and thereupon apprised Plaintiffs of the foreign reporting requirements, including the Form 5471 filing obligations.

38.    Thereafter, Plaintiffs hurriedly retained the accounting firm Citrin Cooperman & Company, LLP in an attempt to remedy the prior mistaken accounting advice they had received, and advised Defendants of the need for Defendants to provide assistance and information to Citrin Cooperman so that it could prepare the necessary Forms 5471 to attach to the returns prepared by Defendants.

39.    Thereafter, Citrin Cooperman, working in conjunction with and assistance and information received from Plaintiffs, prepared Forms 5471 to attach to the 2012 tax returns prepared by Defendants. Unfortunately, and as a direct result of the insufficient time in which

Citrin Cooperman had to do its work, none of the Forms 5471 was correct, some forms were omitted, and others were included unnecessarily.

40.     As a result of Defendants' aforementioned failures, Plaintiffs retained the law firm of Kostelanetz & Fink, LLP ("K&F") to assist them in remedying Defendants' failure to report all necessary income and make all required filings, including but not limited to late filing the FBARs and filing amended returns. K&F in turn retained the accounting firm of Perelson Weiner LLP ("PW") to assist them.

41.     Thereafter, Riveros contacted Defendants and notified them of the need to amend the previous returns, late file the FBARs, and voluntarily disclose the foreign financial assets, and the need for Defendants to continue to provide information, assistance and support to Plaintiffs' advisors in connection therewith.

42.     During this time and continuing until March 2015, Defendants continued to render professional services to Plaintiffs, working on preparing their financial statements and their 2013 tax returns, having telephone conversations with and providing information and assistance to Plaintiffs and their advisors in connection with their work to remedy Defendants' failure to file FBARs, to voluntarily disclose Plaintiff's foreign financial assets, and to amend their previous tax returns, including providing, among other things, information related to the tax returns previously prepared by Defendants and information regarding Plaintiffs' businesses.

43.     In addition, Plaintiffs and their advisors coordinated with Defendants regarding Teich's professed willingness to provide what is commonly referred to as a "reasonable cause" statement on Plaintiffs' behalf. The "reasonable cause" statement is typically used in support of the defense of good faith and reasonable cause based on reasonable reliance – in this case, Defendants' failure to advise Plaintiffs of the need to file certain international information

returns with their annual tax filings and comply with FBAR reporting obligations with respect to foreign bank accounts maintained by foreign companies owned by Plaintiffs..

44.     In March 2015, Plaintiffs' advisors provided Defendant Teich with a copy of the proposed reasonable cause statement. It provided in relevant part: "[i]n the course of my discussion with Raul and other officers of Case Concepts in preparing the annual financials, we discussed foreign corporations that were related to Case Concepts, either because Case Concepts owned the Company directly, or because Raul owned the company. I did not advise Raul that he or Case Concepts were required to file certain international information returns with their annual tax filings, nor did I advise Raul that he may have FBAR reporting obligations with respect to foreign bank accounts maintained by these foreign companies. (A copy of the reasonable cause statement provided to Defendant Teich for his signature in March 2015 is attached hereto as Exhibit 2.)

45.     On or about November 2015, Case Concepts, Riveros and Bell each filed amended income tax returns under the streamlined procedures for tax years 2012 through 2014 and late filed FBARs for 2009 through 2012, triggering additional tax and interest obligations.

46.     As a result of Defendants' failure to timely advise Riveros of the need to report gross income from foreign financial assets, and file FBARs and Forms 5471, Riveros and his wife were forced to pay offshore penalties and interest thereon in excess of $600,000 and to incur over $250,000 in fees and expenses to correct the errors made by Defendants.

*Defendants Failed to Properly Disclose Contributions*
*to Case Concepts' Benefit Plan as Listed Transactions*

47.     On or about December 1, 2006, Case Concepts adopted the Greater Metropolitan Single Employer Death-Benefit Only Plan and Trust and/or the Greater Metropolitan Single

Employer Welfare Benefit Plan and Trust (the "Plan") to provide pre-retirement death benefits and post-retirement medical benefits for all covered employees.

48.     Case Concepts made an initial $100,000 contribution to the Plan in 2006, which was used to purchase whole life insurance policies for Riveros and Bell.

49.     Defendants advised Case Concepts to claim 100% of all contributions made to the Plan as a qualified direct cost on its 2006 taxes and prepared tax returns claiming such a deduction.

50.     On or about October 2007, the IRS published a Revenue Ruling 2007-65 and two notices regarding the use of permanent insurance in welfare benefit 419 plans, and voluntary employees' beneficiary associations for both retirement death benefits and post-retirement health plans.

51.     Revenue Ruling 2007-65 concluded that for purposes of deductions allowable to an employer under § 419, a welfare benefit fund's qualified direct cost does not include premium amounts for cash value life insurance policies paid by the fund, whenever the fund is directly or indirectly a beneficiary under the policy within the meaning of § 264(a).

52.     Notice 2007-83 advised that the IRS and the Treasury Department were aware of certain trust arrangements claiming to be welfare benefit funds and involving cash value life insurance policies that were being promoted to and used by taxpayers to improperly claim federal income and employment tax benefits.  The notice informed taxpayers and their representatives that the tax benefits claimed for these arrangements are not allowable for federal tax purposes; alerted taxpayers and their representatives that these transactions are tax avoidance transactions; and identified certain transactions using trust arrangements involving cash value

life insurance policies, and substantially similar transactions, as listed transactions which must be disclosed.

53.     Pursuant to IRC § 6707A, any person who fails to include on any return or statement any information with respect to a reportable transaction which is required under section 6011 to be included with such return or statement shall pay a penalty determined under section 6707A(b).  Section 6707A(b) provides that, in the case of listed transactions, the maximum penalty is $100,000 in the case of a natural person, and a maximum penalty of $200,000 in any other case.

54.     On or about November 2007, Case Concepts received a letter from National Benefits Plans ("NBP"), the trust for its Plan, regarding the effect of Revenue Ruling 2007-65 and the associated notices issued by the IRS on the Plan.

55.     In the letter and an attached opinion of legal counsel, NBP recommended that Case Concepts file with the Office of Tax Shelter Analysis ("OTSA") by January 15, 2008, a Reportable Transaction Disclosure Statement, IRS Form 8886, for any open tax year in which Case Concepts made claimed deductions based on contributions to the Plan.

56.     The letter further advised that an exact copy of the Form 8886 needed to be filed with the next entity tax return and with the personal tax returns of any 20% or greater shareholder, partner or member of Case Concepts.

57.     On or about December 30, 2007, Riveros emailed Teich a copy of the letter received from NBP advising him that "[t]he trust for the 419e is recommending to file Form 8886 for protective disclosure."

58.     Defendants were, at least thereafter, aware of the need to file the Form 8886 with OTSA and with both Case Concepts' and Riveros' tax returns.

59.     At no time did Defendants advise Riveros of the need for Case Concepts to yearly file a Form 8886 or for Riveros to file a Form 8886 on behalf of himself personally with OTSA.

60.     In 2011 and 2012, Case Concepts made annual contributions to the Plan in the amount of $92,840.

61.     When Defendants prepared Case Concepts' tax returns for tax years 2011 and 2012, they deducted 100% of each year's contribution to the Plan as a qualified direct cost.

62.     When Defendants prepared Case Concepts' tax returns for tax years 2011 and 2012, they failed to attach the requisite Form 8886, Reportable Transaction Disclosure Statement.

63.     When Defendants prepared Riveros' and Bells' personal tax returns for tax years 2011 and 2012, they failed to attach the requisite Form 8886, Reportable Transaction Disclosure Statement.

64.     On or about April 2014, Case Concepts, Riveros and Bell each received a notice from the IRS that their federal tax returns for 2011 and 2012 were being audited.

65.     Upon receipt of the audit letters, Riveros retained K&F and Cremer & Associates, LLP to represent Plaintiffs in connection with the various audits arising out of the failure to disclose the listed transactions.

66.     Thereafter, Riveros contacted Defendants and notified them of the audit notices and the need for Defendants to provide information, assistance and support to Plaintiffs' advisors in connection with the various audits.

67.     During this time and continuing until March 2015, Defendants continued to render professional services to Plaintiffs, working on preparing their financial statements and their 2013 tax returns and assisting Plaintiffs and their advisors by providing, among other

things, information related to the tax returns previously prepared by Defendants, as well as information regarding Plaintiffs' businesses and financials to assist them in responding to the audits.

68.     On or about January 30, 2015, the IRS assessed listed transaction penalties against Riveros and his wife in the amount of $67,547 based on Defendants' failures to disclose the listed transactions in Riveros' 2011 and 2012 tax returns.

69.     On or about January 30, 2015, the IRS assessed listed transaction penalties against Case Concepts in the amount of $20,000 based on Defendants' failures to disclose the listed transactions in Case Concepts' 2011 and 2012 tax returns.

70.     As a result of Defendants' failures to disclose the listed transactions on Plaintiffs' tax returns, Plaintiffs were also forced to incur over $78,000 in fees and expenses to defend themselves in connection with the federal and Connecticut audits.

## COUNT I
### *(Professional Negligence)*

71.     Plaintiffs hereby incorporate by reference the allegations contained in all the preceding paragraphs as if set forth fully herein.

72.     As Plaintiffs' accountant and tax return preparer, Defendants owed Plaintiffs a duty to exercise such skill and care in the performance of rendering professional services as a reasonably skillful and diligent CPA would use under the same circumstances.

73.     Defendants are also subject to professional standards, including generally accepted accounting principles ("GAAP") promulgated by the American Institute of Certified Public Accountants ("AICPA").

74.     By, *inter alia*, failing to advise Plaintiffs of the FBAR, Form 5471 and other disclosure obligations related to foreign affiliates and bank accounts, failing to properly disclose

-13-

all foreign assets on Plaintiffs' tax returns, failing to properly disclose the listed transactions, and failing to properly account for contributions made to Case Concepts' Plan, Defendants breached their duty to render professional services as a reasonably skillful and diligent CPA.

75.     Defendants' conduct also materially deviated from the GAAP promulgated by the AICPA.

76.     As a direct and proximate result of Defendants' negligent failure to render professional services as a reasonably skillful and diligent CPA, Plaintiffs have suffered damages in an amount to be proven at trial, but believed to be in excess of $1,000,000, exclusive of costs and interest.

## COUNT II
*(Unjust Enrichment)*

77.     Plaintiffs hereby incorporate by reference the allegations contained in all the preceding paragraphs as if set forth fully herein.

78.     From 2007 through 2013, Plaintiffs conferred and Defendants accepted, benefits in amounts totaling in excess of $133,625 for accounting, tax and advisory services performed for Plaintiffs

79.     As a direct and proximate result of Defendants' acts and omissions described above, Defendants have been unjustly enriched at Plaintiffs' expense by collecting fees for services that were not rendered because Defendants did not perform the basic work they were hired to perform

80.     Equity and good conscience require that Plaintiffs be compensated for Defendants' unjust enrichment, in an amount to be proven at trial.

WHEREFORE, Plaintiffs Case Concepts International, LLC, Raul Riveros, Ximena Y. Barrera Riveros, Edward Bell and Pamela Bell pray for judgment against Defendants Teich, Beim & Moro, C.P.A.'s, P.C. and David A. Teich as follows:

1.      For all damages incurred, plus interest to the date of judgment;

2.      An award of post judgment interest;

3.      An award of costs incurred in bringing this action; and

4.      For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury as to all Counts set forth in this Complaint.

Dated: New York, New York
      October 31, 2018

Murray & Di Bella, LLP

By:   ___/s/ Martin J. Murray_____
      Martin J. Murray (MM-5103)
      mjm@murraydibella.com
      Leza M. Di Bella (LD-8878)
      lmd@murraydibella.com

5 Penn Plaza, 15th Floor
New York, NY  10001
Tel. 212-725-2044

*Counsel for Plaintiffs Case Concepts International, LLC, Raul Riveros, Ximena Y. Barrera Riveros, Edward Bell and Pamela Bell*

| SCHEDULE B | Interest and Ordinary Dividends | OMB No. 1545-0074 |
|---|---|---|

**SCHEDULE B**
(Form 1040A or 1040)

Department of the Treasury
Internal Revenue Service   (99)

# Interest and Ordinary Dividends

▶ **Attach to Form 1040A or 1040.**

▶ **Information about Schedule B (Form 1040A or 1040) and its instructions is at** *www.irs.gov/form1040* .

**2012**

Attachment
Sequence No. **08**

Name(s) shown on return: **RAUL RIVEROS & XIMENA Y. BARRERA**

Your social security number: **\*\*\*-\*\*-3056**

## Part I
## Interest

**Note.** If you received a Form 1099-INT, Form 1099-OID, or substitute statement from a brokerage firm, list the firm's name as the payer and enter the total interest shown on that form.

| | | Amount |
|---|---|---|
| **1** List name of payer. If any interest is from a seller-financed mortgage and the buyer used the property as a personal residence, see instructions and list this interest first. Also, show that buyer's social security number and address ▶ _____ | | |
| SEE STATEMENT 12 | | 35,089. |
| | **1** | |
| **2** Add the amounts on line 1 | **2** | 35,089. |
| **3** Excludable interest on series EE and I U.S. savings bonds issued after 1989. Attach Form 8815 | **3** | |
| **4** Subtract line 3 from line 2. Enter the result here and on Form 1040A, or Form 1040, line 8a ▶ | **4** | 35,089. |

**Note.** If line 4 is over $1,500, you must complete Part III.

## Part II
## Ordinary Dividends

**Note.** If you received a Form 1099-DIV or substitute statement from a brokerage firm, list the firm's name as the payer and enter the ordinary dividends shown on that form.

| | | Amount |
|---|---|---|
| **5** List name of payer ▶ | | |
| SEE STATEMENT 13 | | 18,642. |
| | **5** | |
| SUBTOTAL FOR LINE 5 | | 18,642. |
| TAX-EXEMPT DIVIDENDS                      SEE STATEMENT 14 | | -6,221. |
| **6** Add the amounts on line 5. Enter the total here and on Form 1040A, or Form 1040, line 9a ▶ | **6** | 12,421. |

**Note.** If line 6 is over $1,500, you must complete Part III.

## Part III
## Foreign Accounts and Trusts

You must complete this part if you **(a)** had over $1,500 of taxable interest or ordinary dividends; **(b)** had a foreign account; or **(c)** received a distribution from, or were a grantor of, or a transferor to, a foreign trust.

| | Yes | No |
|---|---|---|
| **7a** At any time during 2012, did you have a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country? See instructions | | X |
| If "Yes," are you required to file Form TD F 90-22.1 to report that financial interest or signature authority? See Form TD F 90-22.1 and its instructions for filing requirements and exceptions to those requirements | | |
| **b** If you are required to file Form TD F 90-22.1, enter the name of the foreign country where the financial account is located ........................ ▶ | | |
| **8** During 2012, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If "Yes," you may have to file Form 3520. See instructions | | X |

227501
09-25-12

LHA   **For Paperwork Reduction Act Notice, see separate instructions.**

**Schedule B (Form 1040A or 1040) 2012**
**EXHIBIT 1**

My name is David Teich.  I am a Certified Public Accountant and a partner in the firm of Teich Beim and Company PC of Suffern, New York.

I prepared income tax returns for Raul Riveros and his S corporation, Case Concepts International LLC, starting in 2004.  I also prepared annual financial statements for Case Concepts.  In the course of my discussions with Raul and other officers of Case Concept in preparing the annual financials, we discussed foreign corporations that were related to Case Concepts, either because Case Concepts owned the company directly, or because Raul owned the company.  I did not advise Raul that he or Case Concepts were required to file certain international information returns with their annual tax filings, nor did I advise Raul that he may have FBAR reporting obligations with respect to foreign bank accounts maintained by these foreign companies.

**EXHIBIT 2**