# Murray & Di Bella
Counselors at law

**MEMO ENDORSED**

5 Penn Plaza, 15th Floor
New York, New York 10001
Martin J. Murray, Esq.
212-725-2044
mjm@murraydibella.com

Via ECF

December 30, 2019

Hon. Kenneth M. Karas
United States District Judge
United States Courthouse
300 Quarropas Street, Chambers 533
White Plains, NY 10601-4150

Re:   *Case Concepts et. al. v. Teich, Beim & Moro, et al.*, Case No. 7:16-cv-07664-KMK

Dear Judge Karas:

This office represents plaintiffs Case Concepts International, LLC ("CCI"), Raul Riveros ("Riveros"), Ximena Y. Barrera Riveros, Edward Bell and Pamela Bell (collectively, "Plaintiffs") in the above-referenced action. We write in response to the December 24, 2019 pre-motion discovery conference request letter ("Pre-Motion Ltr.") submitted by defendants Teich, Beim & Moro, C.P.A.'s P.C. and David A Teich (collectively, "Defendants"). Defendants' letter raises two separate issues: (1) Plaintiffs' objection and refusal to allow Defendants to engage in the proverbial fishing expedition to obtain documents concerning every aspect of Riveros' financial affairs for over a more than decade-long period; and (2) Plaintiffs' objection to producing documents protected by either the attorney client privilege and/or work product doctrine. As explained below, Plaintiffs' objections are valid in all respects.

This is an action for accounting malpractice. In 2004, Plaintiffs hired Defendants as outside accountant for CCI and as tax return preparer for Plaintiffs. During the course of their representation, Defendants were responsible for preparing CCI's annual financial statements. Documents produced during discovery, including financial statements prepared by Defendants themselves, prove Defendants were aware of the nature of CCI's business – namely, that it imports leather and nylon cases for sale to the cellular phone, mobile electronics and consumer products industries throughout the United States, and that it does so through affiliated overseas companies which act as purchasing agents and perform other services on behalf of CCI. Documents obtained from Defendants' own files are replete with references to foreign related entities, including but not limited to assets maintained and expenses incurred by Case Concepts Asia, Ltd., Case Concepts Europe, Case Concepts (Huang Gang) Co., Ltd. and Case Concepts (Shenzen) Co., Ltd. Defendants' undeniable knowledge of these foreign entities is critical to one of the central issues in this litigation, which is Defendants' failure to advise Plaintiffs of their two-step reporting obligation regarding foreign financial accounts maintained by the foreign entities owned by CCI and Riveros – with step one being to properly complete Form 1040, Schedule B, Part III on Plaintiffs' federal income tax returns which instructs taxpayers to indicate an interest in

a financial account in a foreign county by checking "Yes" or "No" in the appropriate box and to file Forms 5471 with respect to the foreign companies that Plaintiffs owned, and step two being to file Reports of Foreign Bank Accounts (FBARs) with respect to the bank accounts that the foreign companies maintained or for Plaintiffs' own foreign bank accounts. Rather than admit their negligence, Defendants have repeatedly attempted to recast this litigation into a case about what they allege should have been Riveros' knowledge of his FBAR obligations, despite the fact that Defendants have already admitted in their pleadings that they themselves were ignorant of the very same FBAR obligations. This discovery dispute is another attempt to gloss over Defendants' malpractice by claiming that Plaintiffs should have known reporting requirements that their accountants did not.

### Defendants' Overbroad and Irrelevant Document Requests

To date, Defendants have served 49 separate document requests seeking all manner of information from Plaintiffs. In response to these requests, Plaintiffs have produced over 8,000 pages of documents. Under the guise of seeking information concerning Riveros' alleged knowledge of his FBAR obligations, Defendants' document requests seek an array of financial information concerning Plaintiffs, including but not limited to information concerning:

- All mortgages, financial statements, and net worth statements submitted in connection with any applications by any Plaintiff for mortgages, loans, refinancing, and/or lines of credit (Supplemental Request No. 1);
- All wills, trusts, and estate documents created by any Plaintiff over a 16-year period (Supplemental Request No. 6);
- All documents which relate to any foreign bank account or other financial account in which any plaintiff held an interest over a 12-year period (Request No. 11); and
- All documents which show all deposits, withdrawals, interest, dividends or profits earned in connection with any foreign bank account or other financial account in which any Plaintiff had an interest over a 12-year period (Request No. 12).[1]

Whether Mr. Riveros disclosed his foreign financial interests in connection with a mortgage application or included his foreign financial assets on an application for a mortgage, loan or in a will or a trust has nothing to do with his awareness of FBAR filing requirements. Indeed, it is an extreme leap to say that this information is somehow relevant to his "pattern and practice" in the reporting (or failure to report) his foreign income – particularly since Defendants have not established that there was any requirement to report his foreign financial interests in any other context or to any entities other than the IRS and FinCEN. Similarly, information concerning how Riveros and CCI accumulated the balances in the relevant foreign accounts is also irrelevant and not proportional to the needs of this case. Although Defendants attempt to rationalize their requests for documents which show the "amount and source of income earned" in foreign accounts by arguing that information concerning salaries, distributions, W-2s, K-1s and 1099s (or foreign equivalents) from these foreign entities would be relevant – the requests at issue do not seek this information. Rather, the document requests at issue seek all documents concerning the

---

[1] While Defendants assert that Plaintiffs also refused to produce information regarding the account holder on each foreign account listed on Plaintiffs' IRS Form 14654, that is incorrect. As set forth in a December 5, 2019 email sent to defense counsel, information concerning Mr. Riveros' legal relationship with the entities that own each foreign account listed on the Form 14654 and addendum thereto has already been produced and appears on the Form 5471s previously produced in this action and the spreadsheet produced at CCI 0006168.

foreign bank accounts at issue for over a decade-long period, including but not limited to over a decade's worth of deposit and account statements for every foreign account maintained by Plaintiffs' affiliated foreign entities, each of which were engaged in active business and would necessarily have generated tens of thousands of pages of documents. These documents are wholly irrelevant. Neither Plaintiffs' claims in this matter nor the discovery rules give Defendants license to engage in a wholesale fishing expedition seeking all manner of Plaintiffs' financial documents over a decade-long timeframe. At the end of the day, no amount of foreign assets, and no details about what manufacturing or sales activity generated those assets, shed any light on whether Plaintiffs were aware of tax code requirements to file FBARs, particularly when parties as sophisticated as outside tax counsel were, by their own admission, unaware of the filing requirements. Defendants' requests are not proportional to the needs of the case, and the burden and expense of producing all such documents outweighs any likely benefit. Plaintiffs' objections should be sustained.

## Privileged Communications

The second issue raised by Defendants' pre-motion letter is Plaintiffs' refusal to produce certain communications between Plaintiffs and various of the attorneys and accountants engaged to perform corrective work on Plaintiffs' behalf after Plaintiffs discovery of the disclosure obligations, and thus Defendants' negligence, including but not limited to unredacted invoices for services performed and other documents reflecting attorney-client communications or work product.

Defendants do not argue that the documents at issue do not contain privileged information. Rather, they wrongly argue that any privilege which attached to these documents was waived because Plaintiffs put the protected information at issue by making it relevant to the litigation. (*See* Pre-Motion Ltr. at 3 (relying on *Chin v. Rogoff & Co.*, 2008 WL 2073934 (S.D.N.Y. May 8, 2008).) Defendants are incorrect as, pursuant to New York law, the fact that protected information is relevant does not, in and of itself, trigger "at issue" waiver. *Windsor Securities, LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518-19 (S.D.N.Y. 2017). Rather, "[f]or an at-issue waiver to occur, 'a party must rely on privileged advice from his counsel to make his claim or defense.'" *Id.* (quoting *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) and declining to follow *Chin* because it was based on an articulation of the at-issue waiver doctrine "criticized as faulty by the Second Circuit in *In re County of Erie*"). Plaintiffs here have no intention of relying on any privileged communications to prove either their malpractice claim or their continuous representation claim – both of which may be proven without the need to resort to privileged communications. As such, there is no basis for finding that there has been any at issue waiver, and Defendants' privilege challenge should be rejected.

Because Defendants' document requests seek documents which are irrelevant and which are protected by the attorney client privilege and work product doctrine, Plaintiffs respectfully request that Defendants' request for a pre-motion discovery conference be denied.

Very truly yours,

/s/
Martin Murray

*The Court will hold a conference on 1/29/20, at 11:30.*

*So Ordered -*
*KMK 12/31/19*